# IN THE SUPREME COURT OF THE STATE OF NEVADA

TRAVIS FEAZEAL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 76119

FILED

AUG 08 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of three counts of robbery; three counts of battery with the intent to commit a crime; attempted murder with the use of a deadly weapon; two counts of sexual assault with the use of a deadly weapon resulting in substantial bodily harm; two counts of battery with the intent to commit sexual assault resulting in substantial bodily harm; three counts of battery with the use of a deadly weapon resulting in substantial bodily harm; first-degree kidnapping with the use of a deadly weapon resulting in substantial bodily harm; robbery with the use of a deadly weapon; battery with the intent to commit a crime resulting in substantial bodily harm; and coercion with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Appellant Travis Feazeal was 15 years old when a jury convicted him of the above-listed felony charges. He was initially charged in juvenile court, and the juvenile court certified him for criminal proceedings as an adult based on the number and severity of the offenses. After a seven-day trial, a jury found him guilty of 23 crimes, many of which included a deadly weapon enhancement because Feazeal used a gun and skateboard to inflict substantial bodily harm on his victims. The district

SUPREME COURT
OF
NEVADA

(O) 1947A

19-33364

court sentenced him to an aggregate sentence of 58 years to life in prison. Feazeal raises seven contentions on appeal.[1]

*Adult certification*

Feazeal argues that the juvenile court erred when it certified him for criminal proceedings as an adult because it failed to consider mitigating factors, such as his abusive upbringing and ongoing mental health issues.

We first note that the time to appeal the juvenile court's order has long passed. In its order dated March 30, 2015, the juvenile court gave Feazeal 30 days to appeal. Feazeal never filed an appeal. Adult certification by the juvenile court is an independently appealable final judgment, and failure to pursue that appeal constitutes a waiver of this claim. *See* NRS 62D.500(2); *see also Castillo v. State*, 106 Nev. 349, 351, 792 P.2d 1133, 1134 (1990).

Nonetheless, Feazeal argues for the first time in his reply brief that certification was plain error and therefore not subject to waiver.[2] Although this court need not consider arguments raised for the first time on reply, NRAP 28(c) (providing that reply briefs "must be limited to

---

[1]Because the parties are familiar with the facts in this case, we do not recount them further except as is necessary for our disposition.

[2]Feazeal also argues for the first time in his reply brief that his repeated challenges to his competency should have alerted the district court of his intent to appeal, and that the district court should have remanded the case back to juvenile court sua sponte. It is not apparent, however, that a district court has the authority to transfer a case back to the juvenile court sua sponte. Rather, the proper procedure for transfer is by way of a petition. NRS 62B.390(5)(b) ("The child may petition for transfer of the case back to the juvenile court only upon a showing of exceptional circumstances."). Feazeal did not file a petition seeking transfer back to the juvenile court.

answering any new matter set forth in the opposing brief"), we conclude that there was no error here.

NRS 62B.390(1) governs adult certification, and provides, in relevant part:

> 1. . . . [U]pon a motion by the district attorney and after a full investigation, the juvenile court may certify a child for proper criminal proceedings as an adult to any court that would have jurisdiction to try the offense if committed by an adult, if the child:
>
> (a) . . . [I]s charged with an offense that would have been a felony if committed by an adult and was 14 years of age or older at the time the child allegedly committed the offense; or
>
> (b) Is charged with murder or attempted murder and was 13 years of age or older when the murder or attempted murder was committed.

Here, the district attorney filed a motion seeking certification, the probation department conducted a full investigation into the facts and circumstances surrounding the crimes, and Feazeal's offenses, one of which was attempted murder, would have been felonies if committed by an adult. Because Feazeal was 15 years old when he was charged with these offenses, his offenses satisfy *both* NRS 62B.390(1)(a) *and* (b) (although satisfaction of either one, and not both, would suffice). Therefore, all the requirements set forth in NRS 62B.390(1) were met.

Once these statutory requirements are met, NRS 62B.390 grants a juvenile court wide discretion in determining whether to certify a minor as an adult, as evidenced by its use of permissive language. NRS 62B.390(1) ("[T]he juvenile court *may* certify a child for proper criminal proceedings as an adult." (emphasis added)). To guide lower courts in the

exercise of this discretion, we provided three factors for a juvenile court to consider:

> [1] nature and seriousness of the charged offense or offenses; [2] persistency and seriousness of past adjudicated or admitted criminal offenses; and [3] what we will refer to as the subjective factors, namely, such personal factors as age, maturity, character, personality and family relationships and controls.

*In re Seven Minors*, 99 Nev. 427, 434-35, 664 P.2d 947, 952 (1983), *disapproved of on other grounds by In re William* S., 122 Nev. 432, 132 P.3d 1015 (2006). We distinguished the first two factors, which rely on objective records, from the third factor, which focuses on subjective clinical factors, and concluded that the decision to transfer a minor to adult court for criminal proceedings may be based on either of the first two factors alone, but not the third factor alone. *Id.* at 435, 664 P.2d at 952 ("By stressing objective records rather than subjective clinical factors, the court will be adopting much safer and fairer criteria for transfer decisions."). The district court here based its decision to certify Feazeal as an adult on categories one and two. This is entirely consistent with *Seven Minors*.

Accordingly, we conclude that the juvenile court did not commit plain error when it certified Feazeal for criminal proceedings as an adult.[3]

*Pretrial petition for writ of habeas corpus*

Next, Feazeal challenges the district court's denial of his pretrial petition for a writ of habeas corpus. In his petition, Feazeal argued that there was insufficient evidence to support nine of his deadly weapon enhancements because a skateboard is not a deadly weapon. Because the

---

[3]Additionally, we are unpersuaded by Feazeal's argument that his case lacked prosecutive merit.

jury determined that Feazeal was guilty beyond a reasonable doubt, we conclude that any error that may have occurred during the grand jury proceedings is harmless in light of the jury's guilty verdict. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986) (holding that a jury's verdict of guilty beyond a reasonable doubt demonstrated that there was probable cause to charge the defendants with the offenses for which they were convicted); *see also Hill v. State*, 124 Nev. 546, 552, 188 P.3d 51, 54-55 (2008) (approvingly citing *Mechanik*).[4]

*Feazeal's motion to reconsider the issue of his competency*

Leading up to trial, the district court evaluated Feazeal's competency on multiple occasions. Shortly before trial, Feazeal filed a motion asking the district court to reconsider the issue of competency, but the district court denied the motion and set a trial date. Feazeal argues that this was error because his medical records and psychological reports cast doubt on his competency. Having reviewed the record and the district court's multiple findings regarding Feazeal's competency, we conclude that the district court did not abuse its discretion.

First, the district court appropriately held a hearing to discuss Feazeal's motion for reconsideration. At this hearing, it became clear to the district court that Feazeal had not yet exhibited any new signs of incompetency since his last competency evaluation. Rather, Feazeal's motion merely served to put the court on notice that it was possible that Feazeal *could* show signs of incompetency once trial began. This is not

---

[4]Furthermore, we find Feazeal's suggestion that NRS 193.165 (deadly weapon enhancement) is unconstitutionally vague unconvincing and, without any substantive analysis from Feazeal, decline to depart from precedent.

enough to warrant a competency evaluation. *Olivares v. State*, 124 Nev. 1142, 1148, 195 P.3d 864, 868 (2008) (requiring substantial evidence raising doubt as to the defendant's competency before the district court must order a competency evaluation (internal quotation marks omitted)). Moreover, the district court invited Feazeal to raise any competency concerns during trial if Feazeal's condition changed. Feazeal did not contest his competency at any point during trial.

We therefore conclude that the district court did not abuse its discretion when, after conducting a hearing on the matter, it denied Feazeal's motion for reconsideration.

*911 call*

During trial, the State requested to play a recording of an anonymous 911 call. In the recording, the caller explained that a sexual assault was in progress, provided a physical description of the perpetrator and victim, identified the geographical location, and described the injuries inflicted on the victim. Feazeal timely objected, but after listening to the recording outside the presence of the jury, the district court admitted the recording under the present sense impression exception to the hearsay rule.

Feazeal first argues that the district court abused its discretion because the statements in the 911 call were not spontaneous, and thus do not fall under the present sense impression exception. We disagree.

NRS 51.085 provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, is not inadmissible under the hearsay rule." Here, the caller began the conversation by stating "someone is getting raped *right now*," and roughly two minutes later responded that the sexual assault took place "about 4 to 5 minutes ago, *not even that*." Because the caller made the statement contemporaneously with,

SUPREME COURT
OF
NEVADA

(O) 1947A

or immediately after perceiving the sexual assault, we discern no abuse of discretion. *See Harkins v. State*, 122 Nev. 974, 980, 143 P.3d 706, 709 (2006) (holding that this court reviews a district court's decision to admit or exclude evidence under a hearsay exception for abuse of discretion).

Feazeal also argues that admission of the recording violated his confrontation rights because he did not have an opportunity to cross-examine the caller. Whether admission of this evidence violated Feazeal's confrontation rights is a question of law subject to de novo review. *Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009).

The Confrontation Clause affords a defendant the opportunity to confront and cross-examine adverse witnesses. U.S. Const. amend. VI; *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). This clause applies only to testimonial statements. *Davis v. Washington*, 547 U.S. 813, 821 (2006). Although whether a statement is "testimonial" is not always clear, the United States Supreme Court has concluded that statements made during a 911 call are "*non*testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822 (emphasis added). Nevada adopted this conclusion in *Harkins*, and further held that determination of whether a statement is testimonial requires review of the totality of the circumstances. 122 Nev. at 986-87, 143 P.3d at 714 (listing four factors to be considered: "(1) to whom the statement was made"; "(2) whether the statement was spontaneous, or made in response to a question"; (3) whether the purpose of the question was for use at a later trial, or to resolve an emergency; and (4) whether the statement was made during an ongoing emergency).

Here, it appears that the primary purpose of the 911 call was to help the police investigate an ongoing sexual assault, which weighs in favor of admissibility under *Harkins*. Even if it were possible that some statements made during the call were testimonial, Feazeal has not provided this court with a transcript of the 911 call. Therefore, we cannot discern whether some of the statements may have been testimonial and thus implicated Feazeal's confrontation rights. *Jacobs v. State*, 91 Nev. 155, 158, 532 P.2d 1034, 1036 (1975) ("It is the appellant's responsibility to provide the materials necessary for this court's review."). Without the transcript, we cannot conclude that the district court erred when it admitted the 911 call over Feazeal's objection.[5]

*Photo identification*

Next, Feazeal challenges the photo lineup used to identify him, arguing that it was more suggestive than a physical lineup. It appears, however, that Feazeal did not file a motion to suppress the photo identification in district court. Furthermore, he did not object to the in-court identifications or admissions of the photos that followed. He therefore failed to preserve this issue for appellate review. *Archanian v. State*, 122 Nev. 1019, 1031, 145 P.3d 1008, 1017 (2006) (holding that a defendant who did not object to the admission of photographs during trial failed to preserve the matter for appeal).

Even if Feazeal preserved this claim for appeal, we are unable to determine whether the photo lineup violated Feazeal's due process rights

---

[5]This is especially true because the district court had the opportunity to hear the call and determined it was nontestimonial, while this court did not.

because he does not provide this court with the photos used. Nor does he provide any reason explaining why the photo lineup was impermissibly suggestive and how it led to misidentification.[6] *See Simmons v. United States*, 390 U.S. 377, 384 (1968) (requiring that a defendant demonstrate that the photo lineup "procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification"); *see also Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."). He merely argues that a physical lineup would have been more reliable than a photo lineup. Accordingly, we cannot conclude that the photo lineup violated Feazeal's due process rights.

*Feazeal's sentence of 58 years to life*

Finally, Feazeal argues that his sentence constitutes cruel and unusual punishment. "A sentence [within the statutory limits] does not constitute cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience." *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979). Here, Feazeal does not challenge the constitutionality of the statutes and the sentence imposed is well within statutory limits. Therefore, the only question before this court is whether Feazeal's sentence of 58 years to life "is so unreasonably disproportionate to the offense[s] as to shock the conscience." *Id.* After

---

[6]Feazeal attempted to substantiate his claim for the first time in his reply brief. Because the Nevada Rules of Appellate Procedure do not allow litigants to raise new arguments for the first time in a reply brief, we decline to consider them. NRAP 28(c).

SUPREME COURT
OF
NEVADA

(O) 1947A

reviewing Feazeal's judgment of conviction and trial testimony, we conclude that it does not, and thus the district court did not abuse its discretion. *Ruvalcaba v. State*, 122 Nev. 961, 963, 143 P.3d 468, 469-70 (2006) (holding that we review the district court's sentencing determination for an abuse of discretion).

Feazeal was convicted of 23 violent crimes against nine separate victims. His most heinous crimes involved brutally beating female victims and then raping them. Based on the severity and quantity of his crimes, we conclude that the district court's sentence was not "so unreasonably disproportionate to the offense[s] as to shock the conscience." *Culverson*, 95 Nev. at 435, 596 P.2d at 222.

Additionally, we find Feazeal's remaining arguments regarding his sentence unpersuasive.[7] In particular, we find Feazeal's invocation of *Miller v. Alabama*, 567 U.S. 460, 469 (2012), unavailing. In *Miller*, the United States Supreme Court held "that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *Id.* at 470. Central to the Court's holding was the mandatory nature of the punishment. *Id.* at 473-74 (listing several "youth matters" a court should consider during sentencing, and concluding that "the mandatory penalty schemes at issue

---

[7]Feazeal's cursory argument that the district court failed to consider mitigating circumstances is unavailing. NRS 176.017(1) requires that a district court "consider the differences between juvenile and adult offenders, including, without limitation, the diminished culpability of juveniles as compared to that of adults and the typical characteristics of youth." Here, the district court reviewed multiple psychological evaluations and was fully aware of Feazeal's mental health, age, and difficult family life at the time of sentencing. Feazeal does not provide any evidence suggesting that the district court ignored these facts or otherwise failed to consider the guidelines set forth in NRS 176.017.

here prevent the sentencer from taking account of these central considerations").

Here, none of Feazeal's crimes carried a mandatory sentence of life without the possibility of parole. Furthermore, we are unpersuaded by his argument that his sentence constitutes the functional equivalent of life without the possibility of parole. Feazeal bases this argument on the incorrect assumption that he will not be considered for parole until he is over 70 years old. NRS 213.12135(1)(a), however, expressly provides that a juvenile offender will be parole-eligible after 15 years of incarceration if the crimes committed did not result in the death of a victim.[8] Because Feazeal will be eligible for parole after 15 years of incarceration, we decline to consider whether his aggregate sentence of 58 years to life is the functional equivalent of life without the possibility of parole. *See Boston*, 131 Nev. at 988-89, 363 P.3d at 458 (declining to analyze whether Boston's aggregate sentence was the functional equivalent to a sentence of life without the possibility of parole in part because Boston was parole-eligible under NRS 213.12135).

Therefore, neither *Miller* nor its predecessor case, *Graham v. Florida*, 560 U.S. 48, 82 (2010) (holding that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile

---

[8]NRS 213.12135 became effective on October 1, 2015, and applies retroactively to offenses "committed before, on or after October 1, 2015." 2015 Nev. Stat., ch. 152, § 5(2), at 619; *see also State v. Boston*, 131 Nev. 981, 990, 363 P.3d 453, 459 (2015) (applying NRS 213.12135 retroactively to a juvenile offender sentenced in 1988). Additionally, it applies to aggregate sentences. *Boston*, 131 Nev. at 990, 363 P.3d at 459. Therefore, although neither party raised this argument on appeal, we conclude that NRS 213.12135 applies to Feazeal's term of incarceration.

offender who did not commit a homicide"), apply here. We therefore conclude that Feazeal's sentence of 58 years to life does not constitute cruel and unusual punishment and the district court did not abuse its discretion at sentencing.

Accordingly, we

ORDER the judgment of conviction AFFIRMED.[9]

_____ , J.
Pickering

_____ , J.
Parraguirre

_____ , J.
Cadish

cc:    Hon. Michelle Leavitt, District Judge
Terrence M. Jackson
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

---

[9]Having found no errors on the part of the district court, we conclude that Feazeal's request for reversal based on cumulative error lacks merit.

SUPREME COURT
OF
NEVADA

(O) 1947A